No. 43,554

HENRY H. GRANDI, *Appellant*, v. ROBERT L. THOMAS, *Appellee.*

(391 P. 2d 35)

Opinion filed April 11, 1964.

*J. John Marshall,* of Pittsburg, argued the cause and was on the briefs for the appellant.

*Charles H. Menghini,* of Pittsburg, was on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by plaintiff, a resident of New Mexico, from a judgment in a replevin action for the recovery of possession of a registered quarter horse wherein the trial court ruled in defendant's favor by denying plaintiff possession of the horse, and from its further order overruling plaintiff's motion for new trial.

The record discloses that prior to August, 1961, plaintiff, Henry H. Grandi, who had a stock farm in New Mexico, had made a practice of reading the publications of the American Quarter Horse Association and other channels of information because he had been a previous owner of and had "kept track" of the particular horse in question, named "Bold Charge." Plaintiff learned the horse was going on the auction block at Vinita, Oklahoma, on August 26, 1961, and he contacted J. E. Carlin of Rural Route 1, Haskell, Oklahoma, who had been his very good friend for thirty years, and explained to Carlin that he would not be able to attend the sale and asked Carlin to bid the horse in for him. On August 26, 1961, defendant, Robert L. Thomas, the then owner of the horse in question, placed it for sale and it was bought by J. E. Carlin as he had been commissioned by plaintiff to do.

Carlin's testimony was that defendant was dissatisfied with the $475.00 price that was bid and paid for the horse, and was going to

have the clerk of the auction declare a "No Sale" but, as a result of a conversation between Carlin and defendant to the effect that defendant could repurchase the horse for $575.00, defendant decided to allow the sale to stand and Carlin took the horse to his ranch in Oklahoma. A sharp dispute exists as to the time limit in which defendant was to be entitled to repurchase the horse. Carlin testified the limit was to be thirty days while defendant testified it was ninety days. In September, 1961, defendant wrote Carlin a letter inquiring about the horse and stating he hoped to be able to "get him back."

Carlin further testified that approximately sixty days after the conversation at the auction, defendant contacted him and sought performance of the agreement but Carlin told defendant he could not have the horse because the horse did not belong to him.

While Carlin was absent from home in December, 1961, defendant called at the ranch and talked with Mrs. Carlin. She remembered having heard portions of the conversation between her husband and defendant at the time of the sale in Vinita but did not know any of the details. After some persuasion defendant was able to obtain a bill of sale dated December 6, 1961, from Mrs. Carlin, but before she would sign the bill of sale she insisted upon, and defendant added a clause whereby if for some reason her husband objected to her selling the horse, she was to be permitted to repurchase the horse by March 1, 1962, for the sum of $575.00 plus $1.00 a day for keep. She received $575.00 for the horse and in the bill of sale she gave defendant she was receipted for $40.00 cash for the care of the horse during October and November, 1961, which receipt defendant had insisted upon, although Mrs. Carlin testified she did not actually receive the $40.00 in cash. Four days later on December 10, 1961, when Carlin returned home he noticed the quarter horse was gone and was informed by Mrs. Carlin that defendant had come back and had taken the horse. Carlin immediately told his wife the horse did not belong to them, that it belonged to plaintiff, and he explained about his agency to purchase the horse for plaintiff. Mrs. Carlin thereafter made many unsuccessful efforts to repurchase the horse from defendant under the following pertinent portion of the bill of sale between her and defendant:

"Said second party [defendant] agrees to allow first party [Mrs. Carlin] the right to purchase said stallion back within date of March 1, 1962 for the price

of $575.00 _____s and the sum of one-dollar per day feed which second party [defendant] should have in said time to March 1, 1962."

On February 1, 1962, plaintiff informed defendant the reason Carlin could not perform on his agreement with defendant to return the horse was that he had only purchased the horse as agent for plaintiff. This was the first actual notice that defendant admitted that he had of Carlin's agency arrangement with plaintiff.

On March 9, 1962, after he had contacted defendant, plaintiff made demand and tender of $575.00 plus the cost of the horse's keep, but he was refused possession of the horse. Plaintiff then commenced this action in replevin which resulted in judgment for defendant. Hence this appeal.

At the time of the auction sale in August, 1961, defendant gave Carlin a document styled "TRANSFER REPORT and BILL OF SALE" reading in pertinent part as follow:

"THE AMERICAN QUARTER HORSE ASSOCIATION

"P. O. Box 271          Amarillo, Texas

"TRANSFER REPORT AND BILL OF SALE

"(See Instructions on Reverse Side)

"Aug. 26      196   1

"Date Sold—IMPORTANT

"BOLD CHARGE      Number 77,626

"Registered Name and Number of Horse Sold

"From (Seller) _____ ROBERT L. THOMAS _____ (Print)

         GIRARD          KANSAS

         Street   City   State

"To (Buyer) _____ HENRY H. GRANDI _____ (Print)

         First Name   Initial   Last Name

     807 N Guadulupe      Carlsbad      New Mexico

         Street   City   State

"Telephone No. _____ TU 52781

"Location of Animal _____

"ACKNOWLEDGEMENT. I have read the rules and regulations as printed on the reverse side of this form and I hereby certify that the animal agrees with the pedigree on record with the Association.

"Further, I acknowledge and certify that I am the last recorded owner (with the Association) of this horse and have full rights to effect this transfer.

"Therefore, I authorize the Association to record this transfer of ownership.

"Signature of the Seller   Signed      S/   Robert L. Thomas

         Same Name as Last Appearing on Reg. Cert.

"Signature of the Buyer   Signed      S/   Henry H. Grandi      "

In addition to the foregoing, the document also included a provision for a $5.00 transfer fee. At the time of the sale plaintiff's name, address, telephone number, and signature were not placed thereon. The evidence showed that Carlin filled in those blanks at a later time. Evidence that plaintiff paid Carlin the price bid at the sale within thirty days and that prior thereto Carlin had sent plaintiff the above document of the American Quarter Horse Association is not in dispute. Neither is there any dispute on plaintiff's testimony that this was the second time plaintiff's name had appeared in the Association's records as owner of the horse in question and that his desire to repurchase the horse was the reason for his efforts to keep current with the facts surrounding the horse.

The trial court mailed its lengthy memorandum opinion to the parties. Examination of such opinion makes it clear that much of the undisputed testimony in this case was overlooked because in its opinion the trial court raises certain questions which the record reflects were answered in the testimony. The findings of fact and conclusions of law of the trial court were as follows:

"FINDINGS OF FACT.

"1. J. C. Carlin was not acting as agent for plaintiff Aug. 26, 1961.

"2. Ownership of the stallion passed to J. C. Carlin Aug. 26, 1961.

"3. Plaintiff has no ownership or title to the stallion in question.

"4. The purported sale of Dec. 6, 1961 to defendant was ratified by J. C. Carlin and he is estopped to deny the same.

"5. The title and ownership to the stallion is vested in defendant.

"6. The Court finds generally in favor of defendant and against plaintiff.

"CONCLUSIONS.

"1. Plaintiff's petition for replevin of the said stallion, Bold Charge, No. 77,626, is denied.

"2. Plaintiff's amended prayer for damages for unlawful detention of said stallion is denied.

"3. Judgment is rendered in favor of defendant and against plaintiff."

Either plaintiff or Carlin was qualified as a bidder at the auction sale and the rule is that after the auctioneer's hammer fell, either could have been liable for the purchase price of the horse and, further, that when property is struck off to one who is in fact the agent of another for that purpose, and such agency is disclosed by the memorandum of sale, the contract may be enforced against the principal when discovered. (7 Am. Jur. 2d, Auctions and Auctioneers, § 22, pp. 240, 241.) Defendant had the right to complete

the document of the American Quarter Horse Association or see to it that Carlin completed it. Defendant did not see fit to do this but gave up his title relying on an oral conversation upon which there is a sharp dispute in the evidence. This was a special agency and Carlin's agreement to allow defendant to repurchase the horse was beyond his authority, and thus did not bind plaintiff. (*Siedhoff v. Campbell,* 141 Kan. 255, 40 P. 2d 404.)

Defendant contends that Carlin ratified the agency of his wife by his delay in reporting her actions to plaintiff, but since it is certain that Carlin had no title to the property in the first place, neither he nor his agent could have passed title in view of the general rule that ". . . title, like a stream, cannot rise higher than its source." (46 Am. Jur., Sales, § 458, p. 620; *Jordan v. Kancel,* 188 Kan. 292, 294, 361 P. 2d 894.) The Jordan case includes a good discussion of applicable rules of law which we should like to mention even though the facts of that case are not congruent with the facts here.

We find very little comfort for defendant in the authority cited by him in 3 Am. Jur. 2d, Agency, § 325, p. 681, for the reason he admits that by his acceptance of the bill of sale from Mrs. Carlin, he gave her an unqualified right, on or before March 1, 1962, to repurchase the horse for $575.00 plus $1.00 per day for expenses. No question of the statute of limitations is present in this case and we are, therefore, not impressed with defendant's argument that plaintiff waited too long to enter into the negotiations between the Carlins and defendant.

Plaintiff relies on 2 C. J. S., Agency, § 30, p. 1067; § 91, c., p. 1184; § 97, p. 1220, and we think this authority is quite helpful. In the last analysis defendant was bound by the clause present in his bill of sale from Mrs. Carlin, wherein she was given the right to repurchase, and his refusal to return the horse upon timely demands by her and by plaintiff forces us to conclude the trial court erred in entering judgment in favor of defendant and such judgment must be reversed. It is so ordered.